UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

MONICA J. APPLEWHITE,

                              Plaintiff,

            -vs-                                    03-CV-0954C(SC)

ROBERT BRIBER, et al,

                              Defendants.

───────────────────────────────────────

APPEARANCES:    ANNA MARIE RICHMOND, ESQ., and LINDY KORN, ESQ., Buffalo,
                New York, for Plaintiff.

                TIMOTHY J. TROST, Orchard Park, New York, Defendant *Pro Se.*

                ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW
                YORK (PETER B. SULLIVAN, ASSISTANT ATTORNEY GENERAL),
                Buffalo, New York for Defendants Briber, Ciccarella, Croll, Grossman,
                Horan, Kohn, Lynch, Nichols, Novello, Price, Rogers, and Wear.


## INTRODUCTION

        In this action, brought pursuant to Title 28 U.S.C. §§ 1981 and 1983, plaintiff seeks

compensatory damages for the revocation of her license to practice medicine.   The

defendants are individuals sued in both their personal and official capacities who, while

employed by the New York State Department of Health and/or the Office of Professional

Medical Conduct ("OPMC"), were involved in the revocation of plaintiff's medical license.

This matter is now before the court on the defendants' motions to dismiss the complaint

and/or for summary judgment.[1]

─────────────────

        [1]  The court notes that despite plaintiff's failure to challenge the revocation of her license to
practice medicine in a proceeding pursuant to N.Y.C.P.L.R. Article 78, this court has jurisdiction over her
claims.  *See Patsy v. Board of Regents*, 457 U.S. 496, 500–01 (1982); *Monroe v. Pape*, 365 U.S. 167, 183
(1961); *Kraebel v. NYC Dep't of Housing,* 959 F.2d 395, 404 (2d Cir. 1992).

**BACKGROUND**

Plaintiff commenced this action with the filing of a complaint on December 24, 2003 (Item 1).  On April 15, 2004, in lieu of an answer, defendants Briber, Lynch, Nichols, Novello, and Wear filed a motion to dismiss on the grounds of judicial immunity and statute of limitations (Item 6).  Defendants Croll and Horan filed a motion to dismiss (Item 9), and defendant Ciccarella filed a motion for summary judgment for plaintiff's failure to state a claim (Item 10).  Defendant Trost filed a motion to dismiss and/or for summary judgment on the basis of judicial immunity (Item 18), and defendants Grossman, Pellman, Price, and Rogers filed a motion to dismiss on the basis of judicial immunity (Item 20).  Defendant Kohn filed a motion for summary judgment on statute of limitations grounds and for plaintiff's failure to state a claim (Item 22).  Plaintiff filed a memorandum in opposition to the various motions to dismiss and for summary judgment (Item 30).  All defendants filed replies (Items 32, 33, 37).

On December 14, 2004, plaintiff filed an amended complaint, in which she discontinued her claims against defendants Fein and Pellman for lack of service, withdrew her claims under New York State law, and added a claim pursuant to 28 U.S.C. § 1981 for race discrimination.  Defendant Trost filed a motion to dismiss the amended complaint (Item 43), and the remaining defendants filed a motion to dismiss and for summary judgment (Item 44).  Plaintiff filed a response to the motions on January 24, 2005 (Item 48).  On February 7, 2005, the defendants, with the exception of defendant Trost, filed a reply memorandum of law (Item 49).  Oral argument was heard on June 29, 2005.  Thereafter, the parties accepted the court's invitation to file a further submission (Items 55,

2

59).   For the reasons that follow, the motions are GRANTED, and the complaint is dismissed.

## FACTS

Plaintiff was a physician licensed by the State of New York in the field of obstetrics and gynecology (Item 39, ¶¶ 18-20).   In the fall of 1998, plaintiff learned that she was the subject of an investigation by the OPMC.  *Id.,* ¶¶ 21-25.  Plaintiff provided patient medical records and other information, and appeared for interviews with investigative staff of the OPMC, including defendants Ciccarella and Kohn.  *Id.,* ¶¶ 27, 30, 38, 42.  On or about June 27, 2000, plaintiff received a statement accusing her of 23 charges of misconduct, her medical license was summarily suspended by defendant Novello, and she was directed to appear at a hearing.  *Id.,* ¶¶ 53-56.

The hearing commenced on August 25, 2000 and continued on fifteen additional dates until November 9, 2001.  Item 39, ¶ 61.  Defendants Rogers, Nichols, and Wear were members of the hearing committee, and defendant Trost was the Administrative Officer.  *Id.,* ¶ 60.  On or about March 27, 2002, plaintiff was advised that the committee had voted to sustain 11 of the 23 charges of professional misconduct and determined that her license should be revoked.  *Id.,* ¶ 69.  On April 10, 2002, plaintiff appealed this determination to the Administrative Review Board ("ARB") of the OPMC.  *Id.,* ¶ 70.  On July 29, 2002, the ARB, of which defendants Grossman, Briber, Lynch, and Price were members, affirmed the hearing committee's decision.  *Id.,* ¶ 71.  Defendant Horan prepared the ARB decision.  *Id.,* ¶ 72.  Plaintiff alleges that she was targeted for

investigation by the OPMC in part because she was a sole practitioner and a member of a racial minority.  *Id.,* ¶ 73.

## DISCUSSION

**1.  Standards of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "This rule applies with particular force where the plaintiff alleges civil rights violations . . . ." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).  When reviewing a motion to dismiss under Rule 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied,* 531 U.S. 1052 (2000). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and quotation omitted); *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (Rule 12(b)(6) motions permit each particular defendant to eliminate causes of action for which no set of facts has been identified that support the claim(s) against him).

The task of the court in addressing the Rule 12(b)(6) motion is not to determine the weight of the evidence, but only to assess the legal feasibility of the complaint.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  In reaching its determination, a court's review must

be limited to the complaint and documents attached or incorporated by reference thereto. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A "*genuine* issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Id.*  In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion . . . ." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849 (1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover,  a pre-discovery motion, as in this case, should be viewed with significant caution.  *See Serendip LLC v. Franchise Pictures LLC*, 2000 WL 1277370, at *8 (S.D.N.Y. September 7, 2000).

## 2.  Judicial Immunity

Defendants Briber, Lynch, Nichols, Wear, Grossman, Price, Rogers, Horan, and Trost argue that the complaint against them should be dismissed pursuant to Fed. R.

5

Civ. P. 12(b)(6) because they are shielded by absolute judicial immunity.   Defendants Briber, Lynch, Nichols, Wear, Grossman, Price, and Rogers are all employees of the OPMC, either as members of the hearing committee that heard the charges against plaintiff and determined that her medical license should be revoked, or the ARB that upheld the committee's determination.   Defendant Trost contends that he is protected by judicial immunity in his role as the Administrative Officer at plaintiff's hearing.   Defendant Horan claims immunity for his actions in aiding the ARB in drafting its decision.

"'[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. 335 (1871)). Judicial immunity, like other forms of official immunity, is immunity from suit, not just from the ultimate assessment of damages.   *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). Thus, "[judicial] immunity applies even when the judge is accused of acting maliciously and corruptly."   *Imbler v. Pachtman*, 424 U.S. 409, 418 n.12 (1976); *see also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (immunity is not lost where judge acted in error, maliciously, or in excess of his authority).

Absolute immunity has also been extended to agency officials who perform functions analogous to those of a prosecutor or a judge.   *Butz v. Economou*, 438 U.S. 478, 515 (1978). As the defendants acknowledge, the Second Circuit has held that the summary suspension of a medical license pursuant to N.Y. Public Health Law § 230(12)(a) is not sufficiently similar to a judicial proceeding to warrant granting absolute immunity to defendant Novello, the Commissioner of the Department of Health, for her role in the

summary suspension of plaintiff's medical license.  *See DiBlasio v. Novello*, 344 F.3d 292, 296-302 (2d Cir. 2003), *cert. denied,* 541 U.S. 988 (2004).  However, medical professional misconduct proceedings pursuant to Public Health Law § 230(10) that can result in license revocation are sufficiently analogous to judicial proceedings, and the role of board members sufficiently comparable to that of a judge, to afford members of the OPMC absolute immunity.  *See Yoonessi v. New York State Bd. for Professional Medical Conduct*, 2005 WL 645223 (W.D.N.Y. March 25, 2005), *aff'd,* 2006 WL 93089 (2d Cir. January 12, 2006).

In *Yoonessi,* in order to determine whether the OPMC defendants were entitled to absolute immunity, the District Court assessed the OPMC disciplinary process in light of the six factors identified in *Butz*:  (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.  *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 512).  The court found that in contrast to the summary suspension procedures examined in *DiBlasio*, the procedures attendant to disciplinary hearings weigh in favor of absolute immunity.  *Yoonessi*, 2005 WL 645223, at *12.  Specifically, the court found that a disciplinary proceeding that can result in the revocation of a medical license is "'likely to stimulate "harassment and intimidation" in the form of a litigious reaction from [a] disappointed physician.'"  *Id.,* (quoting *DiBlasio*, 344 F.3d at 298).  Additionally, the adversarial nature of a OPMC disciplinary hearing is akin

to that of a judicial proceeding, while a number of safeguards diminish the chance of constitutional errors.  These safeguards include legal rulings made by an administrative officer licensed to practice law in the state of New York, the right of the individual charged to be represented by counsel, produce witnesses and evidence, cross-examine witnesses, and have subpoenas issued, adherence to a preponderance of the evidence standard, and the production of a stenographic record of the hearing.  *See* N.Y. Public Health Law §§ 230(10)(c), (e), (f).  Additionally, the committee prepares findings, conclusions, determinations, and an order, as opposed to summary proceedings wherein the committee simply makes a recommendation which the Commissioner of the Department of Health may reject.  *See* N.Y. Public Health Law §§ 230(10)(g), (I); *Yoonessi,* 2005 WL 645223, *13.  Finally, the court considered the hearing committee's ability to remain independent of the influence of the Commissioner.  The court found that as remuneration for OPMC work is limited by statute on both a per diem and annual basis, OPMC members are unlikely to act out of dependence upon the Commissioner's "goodwill."  *Id.*; *see also*  N.Y. Public Health Law § 230(3).  Additionally,

> [t]he hearing committee in a disciplinary proceeding makes a determination rather than a recommendation and is thus assured at the outset of its ability to render an independent decision.  Moreover, a hearing committee's determination can be reviewed, at the charged physician's request, by the administrative review board for professional medical conduct.  The review board is appointed by the governor, not the Commissioner, and has the authority to review and remand cases for reconsideration or further proceedings.  A physician may also seek annulment of an adverse determination through the state courts . . . .  Thus, there is a meaningful opportunity to correct a biased determination or unconstitutional conduct.

*Id.* (internal cites omitted).

8

Accordingly, this court concludes that the procedures governing disciplinary hearings are sufficiently analogous to judicial proceedings, and the role of board members sufficiently comparable to that of a judge, to afford the OPMC defendants absolute immunity. *See Butz*, 438 U.S. 478 (Department of Agriculture administrative hearing); *Mishler v. Clift*, 191 F.3d 998, 1008 (9th Cir. 1999) (members of Nevada Board of Medical Examiners absolutely immune from suit relative to their participation in disciplinary charges and proceedings); *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999) ("Every court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions.") (citations omitted).

Likewise, defendant Horan, who is sued for having drafted the ARB decision, is also entitled to absolute quasi-judicial immunity as a staff assistant to the ARB.  Horan's duties are best compared to those of a law clerk, in that he drafted the decision and order for the decision-making body.  The Second Circuit affords judicial immunity to court support staff, as court staff members undertake their actions at the direction of a judicial officer.  *See Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997) (docket clerks immune from suit); *Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir. 1988) (law clerks immune from suit).  Additionally, other district and circuit courts have held that a state's medical board, its disciplinary subsidiary, and its members, professional staff, and counsel are entitled to absolute immunity for acts which are directly related to their adjudicatory function and the ultimate resolution of the disciplinary dispute at issue.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 925-26 (9th Cir. 2004) (staff members associated with state health professional

boards also receive absolute immunity for their actions connected to a board's disciplinary proceedings); *see also O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 66 (5th Cir. 1997) (nursing board members and executive director absolutely immune); *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) (medical board's counsel and professional staff entitled to absolute immunity for investigation surrounding disciplinary complaint); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 782-83 (1st Cir. 1990) (board officials and staff members are absolutely immune from suit by physician whose license was revoked); *Howard v. Miller*, 870 F. Supp. 340 (N.D.Ga. 1994) (executive director and secretary immune from liability).   Thus, defendant Horan, who served as a staff assistant to the ARB in drafting its decision, is entitled to absolute quasi-judicial immunity.

Finally, defendant Trost, who served as the Administrative Officer at plaintiff's disciplinary hearing, is entitled to absolute judicial immunity for the same reasons as the OPMC defendants.   New York Public Health Law § 230(10)(e) provides that the Commissioner shall designate an administrative officer, admitted to practice law in the state of New York, to rule on all motions, procedures, and legal objections and draft the conclusions of the hearing committee.   The administrative officer is not entitled to vote on the charges.   Thus, Trost's actions for the hearing committee were "functionally comparable" to that of a judge.   *Butz,* 438 U.S. at 513; *see also Imbler v. Pachtman*, 424 U.S. at 423 n.20; *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994), *cert. denied,* 514 U.S. 1102 (1995).

Accordingly, the defendants' motion to dismiss on the basis of judicial immunity is granted, and the complaint is dismissed with prejudice as to defendants Briber, Lynch, Nichols, Wear, Grossman, Price, Rogers, Horan, and Trost.

## 3. Statute of Limitations

Defendants Novello, Croll, Ciccarella, and Kohn argue that the claims against them are untimely and must be dismissed. They contend that the actions they are alleged to have taken occurred more than three years prior to the commencement of this lawsuit. Defendant Novello was the Commissioner of the New York State Department of Health. Defendants Ciccarella and Croll were investigators with the Department's Office of Professional Medical Conduct ("OPMC"), and defendant Kohn was the Medical Coordinator of the OPMC.[2]

Plaintiff has alleged violations of the United States Constitution, which are pursued through Title 42 U.S.C. § 1983, and a claim of race discrimination pursuant to § 1981. The statute of limitations applicable to claims brought pursuant to §§ 1981 and 1983 in New York is three years. *See Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir. 2004); *see also Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir.), *cert. denied*, 498 U.S. 869 (1990) (§ 1981); *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004) (§ 1983).

In order to state a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory

---

[2]  The court notes that the defendants have been sued in both their official and personal capacities. As plaintiff seeks only money damages, the claims against the defendants in their official capacities are essentially claims against the State and are barred by the Eleventh Amendment. *See  K & A Radiologic Technology Services, Inc. v. Comm. of Dept. of Health on New York,* 189 F.3d 273, 278 (2d Cir.1999) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 & n. 10 (1989); *Edelman v. Jordan*, 415 U.S. 651, 664-68 (1974)).

action. . . .   [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.  2000) (internal quotation marks omitted).  Likewise, a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.  *See, e.g., Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir. 2004).  Personal involvement, within the meaning of this concept, includes direct participation in the alleged violation, gross negligence in the supervision of subordinates who committed the wrongful acts, and failure to take action upon receiving information that constitutional violations are occurring.  *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983' and that a complaint must allege such personal involvement."  *Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (footnote omitted).  As the complaint was filed on December 24, 2003, the individual defendants' conduct, to be actionable, must be alleged to have occurred after December 24, 2000.

### A.  Defendant Novello

Plaintiff alleges that defendant Novello issued an order of summary suspension of her medical license on June 29, 2000 (Item 39, ¶ 56).  She also contends that the members of the hearing committee, the ARB, and the administrative law judge assigned to her case "were subject to undue influence by Defendant Novello, who was the charging party and her agents within the OPMC."  Item 39, ¶ 75(g)(iii).  Plaintiff argues that

defendant Novello, as Commissioner of the Department of Health, was charged with the execution of Public Health Law § 230, and that plaintiff's claims against defendant Novello did not accrue until plaintiff's medical license was finally revoked on July 29, 2002.

The only action alleged to have been directly taken by Commissioner Novello is the summary suspension of plaintiff's medical license.[3]  Plaintiff has not alleged that defendant Novello had any personal involvement in the revocation of plaintiff's medical license after the summary suspension in June 2000.   The decision of the OPMC to revoke plaintiff's license in 2002 was self-executing, and did not require the approval of the Commissioner. *See* N.Y. Public Health Law § 230(10)(g).  Defendant Novello cannot be held liable merely for her position as the Commissioner of the Department of Health.  The Second Circuit has held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability.   *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of § 1983).   It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior.  See, e.g., Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff also seems to argue that the denial of her due process rights was a continuing violation that commenced with the investigation and continued through the revocation of her license and the denial of her appeal (Item 48, p. 14).   The governing

---

[3]  Plaintiff also alleges that the OPMC members "were subject to undue influence by Defendant Novello . . ." (Item 39, ¶ 75(g)(iii)).   However, plaintiff alleges no specific conduct on the part of defendant Novello in this regard.  Such a conclusory allegation is not sufficient to survive the motion to dismiss. *Smith v. Local 8191 B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

three-year statute of limitations may be tolled where a party has alleged a "continuing violation" of constitutional rights, the last act of which occurred within the filing period. *See, e.g., Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). In this case, however, plaintiff has pleaded no facts, in either the original or amended complaint, to suggest that Novello continued to have any involvement with plaintiff's disciplinary proceeding during the limitations period. The mere fact that a defendant's act may have had a continuing impact is not sufficient to find a continuing violation. *See Yip v. Board of Trustees of State University of New York*, 2004 WL 2202594, *5 (W.D.N.Y. September 29, 2004), *aff'd,* 150 Fed. Appx. 21 (2d Cir. 2005); *Blankman v. County of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y.) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980) (continuing violation cannot be based on the continuing effects of earlier unlawful conduct), *aff'd,* 14 F.3d 592 (2d Cir. 1993); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (same)). Because Novello's involvement consisted of an isolated act, occurring over three years before the complaint was filed, the doctrine of a "continuing violation" cannot be applied to toll the statute of limitations as to plaintiff's claims against defendant Novello. *See, e.g, Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir.1995) (to constitute a continuous or ongoing violation, plaintiff must allege that defendants were part of a violation of constitutional rights that continued into the filing period); *Verley v. Goord*, 2004 WL 526740, *8 (S.D.N.Y. January 23, 2004) (continuous violation doctrine does not apply to defendants who are only implicated in isolated acts which occurred prior to the limitations period).

Following oral argument, the court granted plaintiff an opportunity to review records relative to plaintiff's license revocation. The court has reviewed the declaration of plaintiff's

counsel filed August 8, 2005 (Item 55).[4]  Plaintiff has failed to assert any allegation of direct conduct by defendant Novello within the limitations period.  As the only allegation against Novello is the summary suspension of plaintiff's medical license, which occurred more than three years prior to the commencement of this suit, the claims against defendant Novello must be dismissed as time-barred.

## B.  Defendant Croll

The only allegation in the complaint against defendant Croll is that she sent plaintiff a letter on September 22, 1998 seeking medical records (Item 39, ¶ 21).  Accepting the truth of this allegation, plaintiff cannot show that her claim against defendant Croll is timely.  This discrete act, even if it could be considered a violation of plaintiff's rights, is separate and distinct from the revocation of plaintiff's medical license and occurred more than three years prior to the commencement of this action.  Plaintiff has failed to allege any other action by defendant Croll that resulted in the deprivation of her constitutional rights within the limitations period.  Accordingly, the claims against defendant Croll must be dismissed as time-barred.

---

[4]  The court notes that in Item 55 and the attached exhibits, plaintiff argues that the New York Public Health Law procedures for medical disciplinary proceedings are flawed and unconstitutional. Specifically, plaintiff complains that she was denied an impartial adjudicator, was not allowed to confront adverse witnesses, was denied the right to present evidence in her defense and to address constitutional issues, her potential witnesses were intimidated, and her resources were exhausted such that she had to appeal *pro se*.  She also argues that two of the members of the panel, defendants Nichols and Rogers, are African-American, and "were deliberately placed on Dr. Applewhite's panel to create the appearance of trials by a jury of her 'peers.'" Item 55, p. 14.  Significantly, plaintiff does not allege any direct conduct by defendant Novello in these alleged violations.

### C.  Defendants Ciccarella and Kohn

Defendants Ciccarella and Kohn, who interviewed plaintiff during the investigative phase of the disciplinary proceeding, also allege that the claims against them are untimely, but have moved for summary judgment because the complaint does not specify the dates of their interviews with plaintiff.  Thus, they rely on evidence outside the four corners of the complaint, specifically an affidavit (Item 12) and declaration (Item 25) to establish that the first three interviews with plaintiff occurred more than three years prior to the commencement of the action, and that the fourth interview, which took place within the limitations period, did not result in any charges against plaintiff.

In support of the motion for summary judgment, defendant Ciccarella avers that the first three interviews with plaintiff occurred on April 27, 2000, May 11, 2000, and June 8, 2000 (Item 12, ¶ 2).  Ciccarella has further stated that she interviewed plaintiff on October 17, 2001, but that defendant Kohn was not present at the fourth interview (Item 12, ¶ 6; Item 25, ¶ 7).  That interview took place during the pendency of the hearing and involved an allegation that plaintiff had not forwarded a patient's medical records to that patient's new physician (Item 12, ¶ 7).  Ciccarella stated that no charges arose from this interview.  *Id., ¶* 9.  With regard to the first three interviews, Ciccarella stated that she prepared a summary of the interviews and an investigative report, which was forwarded to the investigative committee of the OPMC which then made a decision to file charges against plaintiff.  *Id., ¶* 4.  Ciccarella stated that she investigated the allegations against plaintiff, but played no role in the determination to pursue charges or suspend plaintiff's medical license.  *Id., ¶* 5.  The reports of the first three interviews are attached to the

Ciccarella Declaration (Item 25), and indicate that defendant Kohn was present at those interviews. The report of the fourth interview is attached to the Ciccarella Affidavit (Item 12), and indicates that only defendant Ciccarella and Lewis Fein, Deputy Program Director of the OPMC, were present at the interview. The reports do not indicate the date of their preparation.

Plaintiff has argued that this motion is premature because she has not conducted any discovery. Pursuant to Fed. R. Civ. P. 56(f), if a party cannot present facts essential to justify her opposition to a motion for summary judgment, the court may order a continuance to permit discovery. Following oral argument, defendants agreed to allow plaintiff to review the transcript of the hearing. However, defense counsel later advised plaintiff that she would not be allowed access to investigative records. Item 55, Exh. A.

On this record, the court is unable to conclude that plaintiff's claims against defendants Ciccarella and Kohn are untimely. While three of the interviews occurred prior to December 24, 2000 and the fourth resulted in no charges, it is unclear from the record when the interview reports were prepared or when the summary reports were forwarded to the investigative body of the OPMC. Assuming, for purposes of the motion, that Ciccarella and Kohn committed acts that were violative of plaintiff's right to due process, the court cannot conclude that none of these acts occurred within the limitations period. Accordingly, the motion to dismiss and/or for summary judgment on the grounds of statute of limitations as to defendants Ciccarella and Kohn is denied.

**4.  Failure to State a Claim**

Finally, defendants Kohn and Ciccarella[5] argue that plaintiff has failed to state a claim against them.  Plaintiff alleges that she received letters from defendant Ciccarella on June 1, 1999, June 16, 1999, and April 4, 2000 seeking medical records of several of her patients (Item 39, ¶¶ 29, 31, 37).  Additionally, plaintiff alleges that defendant Ciccarella, with defendant Kohn, interviewed plaintiff on four occasions.  *Id.,* ¶¶ 42 - 43.  Plaintiff alleges that defendants Ciccarella and Kohn questioned her during the interviews (Item 39, ¶ 43), prepared reports of those interviews (*Id.,* ¶ 47), and that a summary report of the interviews was admitted into evidence against her at the hearing.  *Id.,* ¶ 51.  Plaintiff alleges that she was denied due process in that she was denied a verbatim record of the interviews, denied a copy of the investigative reports, and that the hearsay reports were admitted into evidence against her at the hearing without affording plaintiff an opportunity to cross-examine the interviewers.  *Id.,* ¶ 75(a)(i), (ii), (b).  Defendants contend that their actions were taken pursuant to Public Health Law § 230, and that they provided plaintiff with due process rather than deprived her of due process.

None of the actions of defendants Ciccarella and Kohn deprived plaintiff of due process, and the claims against them must be dismissed.  It is well settled under federal and state law that due process considerations do not require the full array of procedural tools available to civil litigants be afforded to a plaintiff in an administrative hearing.  *See e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985);  *Sinha v. Ambach*, 457 N.Y.S.2d 603 ( App. Div. 3d Dep't 1982).  There is no requirement in Public Health Law

---

[5]  Defendant Croll also moved on this basis, but as her motion was granted on the grounds of statute of limitations, it is unnecessary to analyze this argument with respect to her.

§ 230 that a verbatim transcript of pre-hearing interviews be provided to a charged physician, and plaintiff has pointed to no case law supporting her argument.  Likewise, the technical rules of evidence do not apply in an administrative hearing.  *Richardson v. Perales*, 402 U.S. 389, 407-08 (1971); *see also St. Lucia v. Novello,* 726 N.Y.S.2d 488, 490 (App. Div. 3d Dep't 2001) (admission of hearsay evidence at hearing on medical license not violative of due process); N.Y. Public Health Law § 230(10)(f).  Moreover, the decision to admit the reports into evidence was made by the administrative officer of the hearing, not defendants Ciccarella or Kohn.   Finally, plaintiff was not required to be interviewed prior to the imposition of charges, but was given the opportunity to be interviewed "in order to provide an explanation of the issues under investigation."  N.Y. Public Health Law § 230(10)(a)(iii).  She was allowed to, and in fact did, appear with counsel.  The actions of these defendants in requesting patient records and providing plaintiff the opportunity to be heard prior to the imposition of charges provided plaintiff with the process afforded to her by Public Health Law § 230.  Accordingly, plaintiff has failed to state a claim that defendants Ciccarella and Kohn deprived her of due process, and the complaint against these defendants is dismissed.

## CONCLUSION

The motion to dismiss of defendants Briber, Lynch, Nichols, Wear, Grossman, Price, Rogers, Horan, and Trost on the basis of judicial immunity is GRANTED, and the complaint against these defendants is dismissed.  The motion to dismiss the complaint of defendants Novello and Croll on the grounds of statute of limitations is GRANTED.  The motion for summary judgment of defendants Ciccarella and Kohn is DENIED, but the motion to

dismiss of Ciccarella and Kohn for failure to state a claim is GRANTED, and the complaint

is dismissed.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated:   March   14   , 2006
p:\opinions\03-954.feb2206